Jeffrey J. Greenbaum
Victor Herlinsky
James M. Hirschhorn
Steven Fernandez
**SILLS CUMMIS & GROSS P.C.**
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

*Attorneys for Plaintiff Willow Recovery Center LLC*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WILLOW RECOVERY CENTER, LLC,** | Civil Action No.: _____ |
| **Plaintiff,** | Honorable _____ |
| **v.** | |
| **BOROUGH OF KEYPORT, NEW JERSEY AND KEYPORT UNIFIED PLANNING BOARD,** | **VERIFIED COMPLAINT** |
| | *Document Electronically Filed* |
| **Defendants.** | |

Plaintiff Willow Recovery Center, LLC ("Willow Recovery"), by its attorneys Sills Cummis & Gross, P.C., alleges by way of verified complaint, as follows:

**NATURE OF THE ACTION**

1.      This is a civil action by Willow Recovery for declaratory relief and injunctive relief under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, and the New Jersey Municipal Land Use Law ("MLUL"), N.J.S.A. 40:55D-1 et seq., to redress discrimination against individuals recovering from alcohol or drug addiction by Defendants Borough of Keyport ("Borough") and the Keyport Unified Planning Board ("Board") (collectively "Keyport") by a permanent injunction requiring Defendants to approve Plaintiff's application for a use variance ("Application").

2.      Drug and alcohol abuse is wreaking havoc on public health and safety in communities across the United States, with lives lost to drug overdoses every day. In an effort to recognize and combat this growing epidemic, on July 22, 2016, President Obama signed into law the Comprehensive Addiction and Recovery Act of 2016, which documented the abuse of heroin and prescription opioid painkillers as having "a devastating effect on public health and safety in communities across the United States," with the number of drug overdose deaths now surpassing the number of traffic accident deaths:

   According to the Centers for Disease Control and Prevention, drug overdose deaths now surpass traffic accidents in the number of deaths caused by injury in the United States.

Comprehensive Addiction and Recovery Act of 2016, S.524, 114th Cong., § 2.

3.      Sadly, the overdose death rate in New Jersey is three times the national average.  In 2024, Monmouth County suffered 17.9 deaths from drug overdoses per 100,00 people.

4.      Recognizing addiction's devastating effects, the New Jersey Legislature has declared:

   [H]uman suffering and social and economic loss caused by drug addiction are matters of grave concern to the people of the state and it is imperative that a comprehensive program be established and implemented through the facilities of the state, the several counties, the federal government, and local and private agencies to prevent drug addiction and to provide diagnosis, treatment, care, rehabilitation for drug addicts.

N.J. 30:6C-1.

5.      Willow Recovery intends to operate a twenty-bed short-term inpatient detoxification facility for individuals in the first stages of recovery from alcohol and/or drug addiction ("the Facility").  The Facility will be in an existing vacant office building in Keyport located on State Highway 36 on a lot zoned HC ("Highway Commercial").  The Facility will treat only pre-screened, self-pay, or insured patients.  It will not accept patients paying by Medicaid or

Medicare.  Nor will it accept patients referred by a court or patients with a history of violence or sexual offenses.  The Facility will be fenced and secured.  Patients cannot arrive or leave by themselves and will be confined to the Facility during the five-to-seven-day course of treatment. They must be dropped off before admission and picked up after discharge by family members or other responsible persons.  While in the Facility, they will be continuously monitored by the 24/7 full-time staff.

6. There is a regional need for the Facility.  No other facility in the region provides the inpatient services that the Willow Recovery Facility will provide.  The regional general hospital, Bayshore Medical Center, provides first-stage rehabilitation treatment only ancillary to an inpatient admission for another acute illness.

7. While Keyport's HC zone permits a wide variety of commercial uses, including bars and pool halls, it does not permit hospital or institutional uses.  Accordingly, in April 2025, Willow Recovery applied to the Board for a use variance pursuant to the MLUL, N.J.S.A. 40:55D-70(d).  The Application also requested site-plan approval and minor bulk variances pursuant to N.J.S.A. 40:55D-70(c).

8. After four evidentiary hearings, on March 26, 2026, the Board concluded that the site plan and minor variance issues had been favorably resolved.  However, notwithstanding the regional need for a short-term inpatient facility, Willow Recovery's agreement to limit the type of patients admitted, and Willow Recovery's other concessions to assuage community concern about security, the Board voted 6-0 to deny the use variance.  None of the members stated any reason for the denial on the record.

9.      In violation of the MLUL, N.J.S.A. 40:55D-10, as of this date the Board has not provided a written resolution reflecting the denial of the use variance, presumably to delay or forestall judicial review.

10.     The denial of the use variance intentionally discriminates against the handicapped individuals to be served by the Willow Recovery Facility in violation of the ADA and the Fourteenth Amendment.  It also denies Willow Recovery and its prospective patients a reasonable accommodation in violation of the ADA.  Moreover, the denial of the use variance is arbitrary and capricious in violation of the MLUL.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 12133 and supplemental jurisdiction over the state law claims alleged herein under 28 U.S.C. § 1367.

12.     Venue is proper under 28 U.S.C. § 1391 because Plaintiff and Defendants reside in this District, the events giving rise to this Complaint arose in this District, and the property in question is located in this District.

## PARTIES AND PROPERTY

13.     Plaintiff Willow Recovery Center, LLC is a limited liability company organized under the law of New Jersey, with its offices at 72 Broad Street, Matawan, New Jersey, 07747.

14.     Defendant Borough of Keyport is a municipal corporation of the State of New Jersey.  It is a body corporate and politic with the capacity to sue and be sued.

15.     Defendant Keyport Unified Planning Board is a municipal agency of the Borough of Keyport established under the Municipal Land Use Law with the capacity to sue and be sued.

16. The property at issue is 46-48 Route 36, Keyport, New Jersey, Block 106, Lot 1 on the municipal tax map of the Borough (the "Property). The Property is owned by Willow Recovery.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. The Proposed Facility

17. Willow Recovery proposes to operate a short-term inpatient detoxification Facility on the Property, a two-story former office building that would be remodeled for that use. Patients in the first stage of withdrawal from substance abuse would stay under medical supervision for 5 to 9 days, typically 5 to 7 days, before being discharged to another facility for longer term rehabilitation services. The Facility would be licensed by the New Jersey Department of Health, Division of Mental Health and Addiction Services ("DMHAS") under N.J.A.C. 8:111-1.1 et seq.

18. The patients would be drawn from a limited patient base and pre-screened before admission. The Facility will only accept self-pay or insured patients. No Medicaid or Medicare patients will be accepted. Neither will the Facility accept individuals referred by a court, individuals with a history of violence or sexual offenses, or individuals whose medical or psychological condition is too extreme. Patients will be motivated individuals with resources who voluntarily undergo short-term detoxification as the essential first stage of rehabilitation.

19. The Facility will be secured and guarded, with 24-hour video surveillance inside and outside. Access will be by doors controlled by staff members with key cards. Patients will have individual rooms and will be checked by staff at 15- or 30-minute intervals, depending on their condition, throughout the day and night.

20. Patients will not be allowed to arrive or leave the Facility alone. Arriving patients must be dropped off by car, and departing patients must have arranged transportation to pick them

up. If a patient desires to leave but has not arranged transportation, Keyport police will be notified to provide transportation to a known location. The only outside access for patients is a fenced, surveilled smoking area with access controlled by staff members with key cards.

21. The Facility will be staffed with 15 to 20 personnel, including two medical staff, two nursing staff on each shift, one or more therapists, as well as security, housekeeping, and food service staff. There will be two behavioral health technicians on duty at all times for security. Staff shift changes will be staggered in time to ensure continuity of coverage.

22. There is an unmet need for this type of facility in the Keyport area. There is currently no inpatient facility in the vicinity that can provide these initial detoxification services. In 2024, Monmouth County had 5,866 substance abuse treatment admissions for all levels of care. There were 1,241 residential detoxification admissions. No other facility near Keyport responds to the demand for first-stage, short-term inpatient detoxification. A facility in the area owned by Willow Recovery's principals only provides outpatient treatment. The nearby general hospital, Hackensack Meridian Bayshore Medical Center, does not provide inpatient detoxification unless the individual is admitted as an inpatient for another acute medical condition. Bayshore Medical Center's emergency department either transfers to another county or discharges 40-45 individuals who need detoxification every month.

### B.    The Surrounding Vicinity

23. The Property is located on the south side of State Route 36, a divided highway, at the intersection with a local street. The Property is in the HC (highway commercial) zone. Permitted uses in the zone include business and professional offices, retail stores, personal service businesses, restaurants, bars (including so-called gentlemen's clubs), billiard parlors, and car

dealerships.  The Property is bordered on the west by the local street and on the east by a cemetery and a recycling center.  Across the highway to the north is a diner and a retail store.

24.     The southern side of the Property borders an RA, single family residential zone. There are five single family residences southward along the local street, with one adjacent to the Property.  The Property will be buffered from the adjacent residence by a fence and landscaping.

### C.     The Application For A Use Variance

25.     Because a rehabilitation facility is not a permitted use in the HC zone, Willow Recovery applied on April 15, 2025, for a use variance pursuant to N.J.S.A. 40:55D-70(d), together with minor bulk variances pursuant to N.J.S.A. 40:55D-70(c)  and site plan approval.

26.     An applicant for a use variance must provide sufficient proof as to statutory positive and negative criteria, including that the use is either inherently beneficial or the site is particularly suited to the use and that the use advances one or more purposes of planning as stated in the zoning ordinance.

27.     The Zoning Board must then conduct the following four-part balancing test to

28.     The Board must then conduct the following four-part balancing test to determine whether to grant a variance for an inherently beneficial use: (1) the Board must identify the public interest at stake; (2) the Board must identify the detrimental effect, if any, that will ensue if the variance is granted; (3) the Board may reduce the detrimental effect by imposing reasonable conditions on the use; and (4) the Board must weigh the identified public interest against the identified detrimental effects to determine if the variance would cause substantial detriment. *See Sica v. Board of Adjustment Township of Wall*, 127 N.J. 152 (1992).

29.     After completeness review was complete, the Board held four public hearings on the application: July 24, 2025, October 23, 2025, February 26, 2026, and March 26, 2026.

30.     At the hearings, Willow Recovery presented the testimony of four expert witnesses: James Boozan, an experienced manager of rehabilitation facilities; architect Frank Aiello; engineer Mark Leber; and professional planner Christine Cofone.  No expert testimony was presented in opposition.

31.     Mr. Boozan testified with respect to the staffing and operation of the Facility, the restrictions on its patient base, the restrictions on the arrival and departure of patients, and the regional need for the Facility.  His testimony described the Facility's security features and its cooperation with the Keyport police department in the rare instances that might be necessary.

32.     Ms. Cofone testified that, in her opinion, a short-term detoxification Facility is an inherently beneficial use as defined in the MLUL, N.J.S.A. 40:55D-4, akin to a hospital.  Her opinion was based on the regional need for this type of service, the absence of alternatives in Keyport or nearby municipalities, New Jersey's statutory public policy that alcohol abuse and drug addiction are major public health issues that require mobilization of the full resources of State and local government to combat, and the protection under the Americans With Disabilities Act of persons receiving treatment for drug and alcohol abuse.

33.     Ms. Cofone further testified that, in her opinion, the Facility would not impair the purpose of the zone plan or adversely affect neighboring properties.  Willow Recovery's limitation of the type of patient, restrictions on arrival and departure, on-site surveillance and security, coordination with local police, and daily removal of drug paraphernalia and medical waste would mitigate any local concerns about safety.  She further testified that the use was consistent with the purpose of the HC zone to provide facilities to serve regional needs, and that, unlike some other uses, it was not expressly prohibited by the zoning ordinance.  On balance, she concluded, the inherently beneficial nature of the use outweighed any detrimental impact the Facility would have

and satisfied the legal standard for a use variance under *Sica v. Wall Twp. Bd. of Adjustment*, 127 N.J. 152 (1992).

34.    During the hearings, a number of residents expressed strong opposition to the Facility.  Residents stated fears that patients would escape, that drugs would be brought in, that police activity would be provoked, that the Facility was inconsistent with the character of the town, and that it would harm single family residential neighborhoods.  They also stated their opinions that there was no need for the Facility in Keyport and that such facilities should be sited in remote locations.  Two members of the public, including the owner of the house behind the Property literally testified that while they had sympathy for people suffering from drug or alcohol abuse in principle, "nobody wants it in our back yard."

35.    On March 26, 2026, the Board voted 6-0 to deny the Application.  Before introducing the oral resolution to deny, the Vice-Chair of the Board stated that Willow Recovery had convinced him and, he hoped, the other members that there is a regional need for the facility, that it had satisfied the site plan issues, and that the only issue for decision was the use variance. While the Vice-Chair implied that the use as a rehabilitation facility is not inherently beneficial, no member of the Board stated on the record the reason to deny the use variance.  No findings of fact or conclusions of law were stated on the hearing record.

36.    The MLUL, N.J.S.A. 40:55D-10(g)(2), requires that if a zoning board does not state its findings of fact and conclusions of law on the hearing record, a denial of an application must be memorialized within 45 days of the vote in a written resolution stating findings of fact and conclusions of law.  Although more than 45 days have passed, the Board has not adopted a memorializing resolution as of this date.

37.   Defendants' refusal to grant Plaintiff's Application for a use variance constitutes intentional discrimination against the disabled individuals who are the Facility's prospective patients.

38.   Plaintiff has suffered damage through Defendants' refusal to grant the Application.

## COUNT ONE

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED 42 U.S.C. § 12101, ET SEQ.

39.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 38 as though fully set forth herein.

40.   The prospective recovering patients of the Facility are persons with disabilities within the meaning of 42 U.S.C. §§ 12102 and 12114(b).

41.   The prospective recovering patients of the Facility are qualified individuals within the meaning of 42 U.S.C. § 12131 with the right pursuant to 42 U.S.C. § 12132 to be free of discrimination in the provision of public services, including municipal land use regulation.

42.   Pursuant to 42 U.S.C. § 12133, Willow Recovery has standing to assert the right of its prospective patients to be free of discrimination in the provision of public services.

43.   Pursuant to 28 C.F.R. § 35.130(b)(7), the enforcement of municipal zoning laws constitutes the provision of a public service within the meaning of 42 U.S.C. § 12132.

44.   Because the operation of a facility for the rehabilitation of drug and alcohol users is not a use permitted under the Keyport zoning ordinance, the grant of a use variance is necessary to permit the operation of the Facility in order that its disabled prospective patients can receive treatment within Keyport.

45.     Defendants' denial of Plaintiff's request for a use variance to permit the operation of the Facility was made with the intent of excluding qualified individuals suffering from a disability from receiving treatment within Keyport.

46.     The use variance can be granted without imposing undue financial or administrative burdens on Keyport or requiring a fundamental alteration in the nature of Keyport's zoning program.  Grant of the requested use variance constitutes a reasonable accommodation to the needs of the disabled prospective patients of the Facility.

47.     The actions of Defendants described above constitute unlawful discrimination against disabled individuals in the provision of public services in violation of 42 U.S.C. § 12132.

## COUNT TWO

### VIOLATION OF THE U.S. CONST. AMEND. XIV, § 1
### PURSUANT TO 42 U.S.C. § 1983

48.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 47 as though fully set forth at length herein.

49.     The Fourteenth Amendment to the Constitution guarantees to all persons equal protection of the laws.

50.     Defendants' refusal to grant the requested use variance denies Plaintiff the equal protection of the laws in that it intentionally excludes a facility for the treatment of disabled persons from a suitable location in Keyport without a rational basis for the exclusion

51.     Defendants' denial of the requested use variance constitutes state action.

52.     Denial of the use variance denies Plaintiff and Plaintiff's prospective disabled patients equal protection of the laws in violation of the Fourteenth Amendment.

## COUNT THREE

### VIOLATION OF NEW JERSEY MUNICIPAL LAND USE LAW
### N.J.S.A. 40:55D-10(g) and N.J.S.A. 40:55D-70

53.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 52 as though fully set forth at length herein.

54.    On March 23, 2026, the Board voted 6-0 to deny Plaintiff's application for a use variance.

55.    The Board did not state the reasons for the denial or place findings of fact or conclusions of law on the record at the March 26, 2026, hearing.

56.    N.J.S.A. 40:55D-10(g) requires the Board to place on the record findings of fact and conclusions of law supporting the denial of Plaintiff's application.  If such findings and conclusions are not stated on the record at the time of the Board's vote to deny, N.J.S.A. 40:55D-10(g)(2) requires the Board to adopt a resolution memorializing the denial within 45 days of the meeting at which it voted to deny the application.  It has failed to do so.

57.    As of the date of this Complaint, the Board has not adopted a resolution memorializing its decision to deny Plaintiff's application for a use variance.

58.    The Application sought site plan approval, bulk variances under N.J.S.A. 40:55D-70(c), and a use variance pursuant to N.J.S.A. 40:55D-70(d) to permit the operation of a medically supervised short-term detoxification facility for recovering alcohol and drug users in Keyport's HC highway commercial zone.

59.    Plaintiff, through its four expert witnesses, provided competent and credible testimony to support the grant of the use variance.

60.    James Boozan, an experienced manager of alcohol and drug rehabilitation facilities, testified with respect to the operation of the Facility, its security arrangements, and the regional need for such a facility.

61.    Professional planner Christine Cofone testified that the Facility is an inherently beneficial use, that it was consistent with uses authorized in the HC highway commercial zone, and that the conditions on its operation mean that it can be located in the HC highway commercial zone without harm to neighboring properties and without impairing the purposes of the zoning plan.

62.    No expert testimony was presented in opposition to the testimony presented by Plaintiff.  The only testimony in opposition to the grant of the use variances was statements by members of the public expressing fear of and opposition to any drug and alcohol rehabilitation facility within Keyport.  Such testimony is of no legal weight.

63.    The decision of the Board to deny the use variance and refusal to issue its Resolution within 45 days as required by law was arbitrary, capricious and contrary to law because, among other reasons, the Board did not consider the Facility to be an inherently beneficial use and because the Board concluded that the presence of the Facility within the HC highway commercial zone would impair the purposes of the zoning plan without the support of any competent, credible evidence in the record.

WHEREFORE, Plaintiff respectfully requests that the Court:

a.    Enter a declaratory judgment that Defendants' denial of Plaintiff's application for a use variance for the Facility constitutes unlawful discrimination against disabled persons pursuant to 42 U.S.C. § 12132, is arbitrary, capricious, and contrary to N.J.S.A. 40:55D-70, and denies Plaintiff the equal protection of the laws in violation of the Fourteenth Amendment;

b.    Grant a preliminary and permanent injunction mandating that Defendants grant Plaintiff's Application for a use variance authorizing the operation of a short-term drug and alcohol detoxification facility licensed by the State of New Jersey on the Property.

c.    Award Plaintiff compensatory damages as authorized by law.

d.    Award Plaintiff its reasonable attorneys' fees pursuant to 42 U.S.C. §§, 1988 and 12205, N.J.S.A. 40:55D-10(g), and other applicable law.

e.    Award such other and further relief as the Court deems just and proper.

**SILLS CUMMIS & GROSS P.C.**
Attorneys for Plaintiff Willow Recovery Center LLC

By:    s/ *Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum
Victor Herlinsky
James M. Hirschhorn
Steven Fernandez

Dated: July 2, 2026

- 14 -

## VERIFICATION

JAMES BOOZAN, of full age, declares as follows:

I am Director of Operations of Willow Recovery, LLC, Plaintiff in the above captioned action. In that capacity, I am responsible for the oversight of Plaintiff's application for a use variance before the Keyport Unified Planning Board.

I have read the foregoing Verified Complaint. The facts contained therein are based upon my personal knowledge, my review of documents and other information, and information supplied to me by others. As to facts based upon my personal knowledge, they are true. As to facts based upon my review of documents and other information, and information supplied by others, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 2, 2026

JAMES BOOZAN